IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v )<br>)<br>STEVIE "DANIELS" JUSTUS )<br>BECKY SUE JUSTUS )<br>STEVIE JUSTUS, JR. )<br>)<br>KAREN DAUGHERTY, )<br>Petitioner, )<br>v )<br>)<br>UNITED STATES of AMERICA )<br>Respondent. ) | **MEMORANDUM OPINION**<br>Criminal No. 1:10cr00030 |

This matter is before the undersigned on the Petition For Hearing To Adjudicate Ownership Of Seized Assets, (Docket Item No. 73) ("Motion"), filed on behalf of the petitioner, Karen Daugherty. An evidentiary hearing on the Motion was held on June 3, 2011. Based on the evidence and the arguments and representations of counsel, and for the reasons set forth below, I will deny the Motion.

## I.  Facts

The Motion seeks the return of a Bobcat Excavator C series, item number 150349628387, seized by the government in the arrest of Stevie Daniels Justus on drug charges on April 1, 2010, ("Excavator"). Justus subsequently pleaded guilty to those charges and has been sentenced to a 60-month term of incarceration. By

Preliminary Order of Forfeiture entered December 22, 2010, the Excavator was ordered forfeited to the government as property derived from proceeds Justus obtained from his drug trafficking offenses.

In the Motion, Daugherty claims that she bought the Excavator from B&R Equipment, ("B&R"), in North Wilkesboro, North Carolina, on June 9, 2009, and that it belonged to her, not Justus, on the date it was seized. In support of the Motion, Daugherty attached a Bill of Sale which states: "B&R Equipment sold a mini 2002 Bobcat Excavator C Series Item # 150349628387 to Karen Daugherty for Charles Garage & Wrecker Service on 6/9/09 for the sum of $5,600.00 (five thousand and six hundred dollars)." (Petitioner's Exhibit No. 2.) The Bill of Sale is signed by "Ritchie Moxley." Also attached to the Motion, was a Payment Summary from ebay for a Bobcat X320 Mini Excavator C Series, 150349628387. (Petitioner's Exhibit No. 1.) This Payment Summary listed the seller as "cp7914" and the buyer as "amd2011." It also stated that the price for the Excavator was $5,600.00 and that the seller should ship the excavator to Karen Daugherty. The Motion and its attachments were affirmed by Daugherty under penalty of perjury.

At the June 3 hearing, Betty Sue Charles, the owner of Charles Garage & Wrecker Service, ("Charles Garage"), and the mother of Daugherty, testified that she had paid $5,600.00 for the Excavator which she had authorized her son-in-law, Bruce Daugherty, to buy on ebay. Charles stated that Bruce had been manager of Charles Garage since January 2009. Charles testified that she went to the bank and withdrew the money for the Excavator and gave it to Bruce so that he could purchase the Excavator for the business. Bruce then went to North Carolina, picked up the Excavator and brought her the Bill of Sale and ebay Payment Summary, and she filed them in a file cabinet at Charles Garage.

Charles stated that she had bought the Excavator for use in her business and believed that she owned it until she discovered that the Bill of Sale had been made out to her daughter. Charles stated that her daughter had no ownership interest in Charles Garage and that she did not intend for legal title to the Excavator to be held in her daughter's name. Charles stated that Bruce told her that the Excavator had been seized some time after Justus's April 1, 2010, arrest. Charles testified that Bruce told her that he had loaned the Excavator to Justus to use. Charles stated that she had never sold or conveyed her interest in the Excavator and had not authorized Bruce to sell the Excavator.

Bruce Daugherty testified that he sought permission from Charles to bid on and purchase the Excavator for Charles Garage. Bruce stated that he used his wife's ebay account to find and bid on the Excavator. Bruce stated that the ebay Payment Summary attached to the Motion was printed off ebay by either himself or his wife at the time they were notified that they had the winning bid. Bruce stated that he traveled to North Carolina and picked up the excavator from B&R Equipment. Bruce stated that when he picked up the Excavator, he requested a bill of sale. He stated that B&R provided him with the Bill of Sale attached to the Motion. He said the person who provided him the Bill of Sale stated that it had to be made out in the name of the person who purchased the Excavator. Bruce stated that when he returned with the Excavator, he gave the Bill of Sale and the Payment Summary to Charles.

Bruce Daugherty testified that, while he operated Charles Garage, he did not own any part of it. He also testified that he did not have authority to buy and sell equipment owned by Charles Garage without Charles's approval. Bruce testified that he loaned the Excavator to Justus, his cousin, about four or five weeks before

Justus's arrest, so that Justus could dig a ditch. Bruce also testified that he did not sell the Excavator to Justus and that he had no authority to sell the Excavator.

Karen Daugherty testified that her husband, Bruce Daugherty, used her ebay account to look for and buy the Excavator for Charles Garage. Daugherty stated that she did not know the Bill of Sale was in her name until after the Excavator was seized. Daugherty stated that she had no ownership interest in Charles Garage and no ownership interest in the Excavator. She stated that she was not involved in the business of Charles Garage. She stated that the Bill of Sale should have been in the name of her mother, Betty Charles, or Charles Garage.

Justus testified that he bought the Excavator from Bruce Daugherty in March 2010. He stated that he paid him $6,000.00 down, $1,000.00 on delivery and promised to pay him $4,000.00 more by April 3, 2010. Justus stated that he and Bruce agreed that if he did not pay the additional $4,000.00 by April 3, Bruce could take the Excavator back. Justus stated that Bruce delivered the Excavator to his house on a "rollback" truck. Justus said that Bruce came back on March 31, 2010, wanting the additional $4,000.00, but he told Bruce that it would be a few more days before he had the money to pay him. Justus said that Bruce gave him a bill of sale for the Excavator and that he last saw this bill of sale on the nightstand beside his bed the night before his April 1 arrest.

Justus stated that he bought the Excavator intending to use it to perform hired excavation work. He stated that he did use it to perform work for some friends on the right hand fork of Guesses Fork prior to his arrest. Justus stated that he was a convicted felon before his recent federal drug conviction. He also

admitted that while in custody previously on state charges, he had pretended to be insane by getting down on all fours in the jail cell and barking like a dog.

Timothy Blankenship, an informant who performed several of the controlled buys that led to Justus's federal drug arrest, testified that, on at least two occasions, Justus told him that he owned the Excavator. These conversations were recorded as a part of the ongoing drug trafficking investigation. Blankenship authenticated video and audio tape recordings of meetings he had with Justus on March 3 and 22, 2010. (Government's Exhibit Nos. 4 and 5.) During these meetings, Justus talked about wanting to use the Excavator to perform work for the county or to sell the Excavator to Blankenship's father. Blankenship testified that Justus never told him that he had a bill of sale for the Excavator and that he never saw a bill of sale for the Excavator.

Barry Pennell testified that he was one of two partners who owned B&R. He stated that Richie Moxley was the other partner. Pennell said that B&R sells approximately 400 pieces of equipment a month on ebay. Pennell stated that B&R sold the Excavator on ebay in June 2009. He stated that he remembered this particular piece of equipment because the original decals had been removed and because it had "problems."

Pennell testified that a man, woman and little boy driving an old white Chevrolet truck pulling a trailer picked up the Excavator at their business in North Wilkesboro, North Carolina. Pennell stated that the Payment Summary attached to the Motion is the document generated by ebay memorializing the sale of the Excavator. Pennell also testified that the Bill of Sale attached to the Motion was not issued by B&R. Pennell stated that when B&R sold property on ebay, it did

not issue a bill of sale separate from the payment summaries generated by ebay. Furthermore, he testified that, if B&R issued a bill of sale, it used preprinted two-ply bill of sale forms with the company logo printed on them.  He also stated that he was familiar with Richie Moxley's signature and that the signature on the Bill of Sale attached to the Motion did not appear to be Moxley's signature.  Pennell also testified that someone called and spoke to Moxley some time last year about any documents regarding the sale of the Excavator.  He stated that he saw Moxley search his files for the Payment Summary and send it by facsimile to someone, but he does not know to whom.

Richie Moxely also testified that B&R sold the Excavator on ebay in 2009. Moxley identified the Payment Summary attached to the Motion as the invoice from the sale of the Excavator on ebay. Moxley stated that Karen Daugherty called him some time last year and said the she had lost the original and asked that he send her a copy by facsimile, which he did.  Moxley testified that Bruce and Karen Daugherty drove a white pickup truck pulling a trailer and picked up the Excavator from their North Wilkesboro business location.

Moxley said that he did not create or sign the Bill of Sale attached to the Motion.  In particular, Moxley pointed out that his first name is misspelled "Ritchie" on the document. Moxley confirmed that B&R has preprinted forms it uses to create bills of sale when necessary.

## II.   Analysis

Under federal forfeiture law, the court can order a criminal defendant convicted of illegal activity to forfeit to the government any property used in the criminal activity or derived from proceeds of the criminal activity. *See* 21 U.S.C.A. § 853(a) (West 1999). The forfeiture law also allows a third party to seek prevention of the forfeiture by petitioning the court for the return of the property. *See* 21 U.S.C.A. § 853(n)(2) (West 1999.) A third party asserting an interest in forfeited property has the burden to establish by a preponderance of the evidence that she, rather than the defendant, owned the property, she held an interest in the property that was superior to the defendant's interest or she was a bona fide purchaser for value without cause to believe the property was subject to forfeiture. *See* 21 U.S.C.A. § 853(n)(6) (West 1999).  In this case, Daugherty concedes that she possessed no ownership interest in the Excavator other than that the Bill of Sale was mistakenly made out in her name.  Based on this, however, she argues that she held legal title to the Excavator on the date it was seized.

"A bill of sale is merely a deed to personalty by which 'one person assigns or transfers his right to or interest in goods and personal chattels to another.'" *Vicars v. Atl. Disc. Co.,* 140 S.E.2d 667, 671 (Va. 1965) (quoting BLACK'S LAW DICTIONARY 211 (4th ed.).  The Fourth Circuit has held that courts should look beyond bare legal title, however, and determine whether a third party ownership has a true interest in forfeited property. *See United States v. Morgan*, 224 F.3d 339, ___ (4th Cir. 2000). Karen Daugherty, nonetheless, has not met her burden to show she ever held legal title to the Excavator. Both Moxley and Pennell have specifically denied the authenticity of the Bill of Sale transferring title of the Excavator to Karen Daugherty.  I specifically find their testimony more credible

than that of Bruce Daugherty, who testified that he received the Bill of Sale from B&R when he picked up the Excavator. While both Mosley and Pennell admit that B&R sold the Excavator in June 2009, they can provide no information as to the purchaser other than the information contained on the ebay Payment Summary. Furthermore, Karen Daugherty, herself, admitted that, while her ebay account was used to purchase the Excavator, she had no true ownership interest in the Excavator. Karen Daugherty, Bruce Daugherty and Betty Charles all agree that it was Betty Charles who was the true owner of the Excavator. That being the case, I find that Daugherty has not established by the preponderance of the evidence that she ever owned or had any interest in the Excavator. Therefore, the Motion will be denied.

An appropriate Order will be entered.

ENTERED: This 17th day of June 2011.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE